JOHN POLHEMUS, appellant,

*v.*

GEORGE MIDDLETON et al., administrators, respondents.

1. Where administrators act in good faith and with ordinary prudence and discretion in selling their intestate's chattels after an, as yet, unproved and apparently unfounded claim therefor has been made, they should be allowed, out of the estate, the costs and reasonable counsel fees of a trial afterwards brought at law by the claimant, wherein he recovered a judgment for the value of the chattels so claimed.—*Held*, under the circumstances of this case, that they should not be indemnified for the difference between the amount realized at their sale of the chattels and the value of the chattels as fixed by the verdict.

2. Administrators cannot be allowed for taxes on their intestate's land, assessed and paid by them after his death.

Appeal from decree of Monmouth orphans court.

*Mr. G. C. Beekman* and *Mr. J. Wilson*, for appellant.

*Mr. W. H. Vredenburgh*, for respondents.

THE ORDINARY.

This is an appeal from a decree of the Monmouth orphans court, upon exceptions to the final account of George Middleton and Henry Larrison, two of the administrators of Tobias Polhemus, deceased. The intestate died in March, 1879. The exceptant and appellant is John Polhemus, one of his sons. John

lived with his father on his father's farm at the time of his father's death. When the appraisement was made he claimed certain articles of the personal property on the premises where the intestate and he lived. What he claimed was not (with a single exception) inventoried, and none of those articles were sold. At the sale by the administrators he claimed almost all the personal property which they sold. His claim, on the latter occasion, was totally disregarded, and he subsequently brought suit in trover against the accountants (there were three administrators, the other being his brother George) for damages for selling the goods. The suit was brought against them, not as administrators, but in their individual capacity. The record shows that he recovered $1,642.60 damages and $72.62 costs, in all, $1,715.-22. At the sale (and after he made his claim to the goods), he bought some of the property which he claimed, and his brother George also bought some, which he turned over to John. By a receipt given on the settlement which John made of the judgment, it appears that the amount of those purchases by him and George (they did not pay for them) was put in the settlement at $900, and the amount of the verdict was stated to be $2,542.60, and after deducting the former from the latter the balance, with the costs, was paid to John by the defendants in the judgment. The orphans court allowed some of the exceptions and overruled others. From their decree, so far as it overruled his exceptions, the exceptant appealed. He alleges that his purchases and those of George did not together amount to $900, but were much less, viz., about $800, and he insists that the court below erred in allowing (as he alleges they did) the accountants, in the restatement of the account, a credit of $900 on that account. He also insists that the accountants ought not to have credit for the money which he says they paid for the special damages which he alleges were recovered by him against them in the trover suit, and which he says amounted to $400. Nor for the costs and expenses of defending that suit. He also insists that they ought not to have allowance for certain taxes paid on the intestate's land, or for certain school-district taxes paid by one of them, Mr. Middleton, in respect of the personal estate in his hands,

16

Polhemus v. Middleton.

at the place of his residence, which was not in the district in which the intestate lived.

The record shows that the orphans court, in restating the account, adopted a method which renders it unnecessary to consider the question as to the real amount of the purchases by John and George. As to that amount there is some contrariety of evidence. The court, in restating, charged the accountants with the balance which the account as presented by them showed, and debited them with the items for which they prayed allowance in connection with the exceptant's goods. As the account then stood the accountants were charged with the appraised value of the goods (in the inventory), and with all the items of allowance which they had claimed in respect thereto. The court then credited them with the appraised value of those goods, $2,136.-60, and taking the amount for which the goods were sold by them, $1,196.22, from the amount of the judgment in the trover suit, $1,715.22, credited them with the balance, $519. So, it may be seen, the method of statement adopted rendered the question as to whether the purchases of the exceptant and George amounted to $900 or not, of no importance. And that method is correct, if the difference between the appraised value of the goods in question and the amount of the judgment in trover was properly allowed to the accounting administrators. There is, it may be remarked, no evidence that there was, in the judgment, any allowance of damages beyond the value of the property at the time of taking it. In the record (p. 61) there is what appears to be an admission that, in the trover suit, the exceptants made no claim for damages beyond the value of the goods at the time when they were taken. But, however that may be, if the conduct of the accountants in selling the goods was fair and judicious, and purely in the interest of the estate, they are entitled to indemnity from the estate. The property in question was, at the intestate's death, apparently in his possession. It was, with the exceptant's knowledge, and without any protest or objection on his part, taxed, after he became the owner of it, as the property of the intestate, who gave it in to the assessor as his, and paid the tax upon it as his accordingly. The exceptant derived

his title to part of it by gift from his father, the intestate, made in January or February, 1878. He did not inform his sisters, or either of them, that his father had given the property to him. The apparent possession and ownership of the property were not changed up to the death of the intestate. When, as has ·been before stated, the appraisal was made, the exceptant claimed some of the goods on the farm, but not all ; and those to which he laid claim were, with a single exception (and that article was not sold, but appears to have been removed by him) neither appraised nor inventoried. The night before the sale he made claim to the goods ·in question, and on being told by Mr. Middleton that he must have better evidence than his mere allegation, promised to prove his title the next day by two witnesses. He did not produce any witness nor any evidence beyond his assertion, and the accountants (George did not concur in their action) proceeded to sell the goods notwithstanding the claim. Under the circumstances, in view of the fact that the exceptant did not claim the goods when the inventory was made, but, while he claimed others did not lay claim to them, and that he produced no evidence of 'his title; that some of the goods had belonged to the intestate, and were apparently in his possession up to the time of his death ; that although, according to the exceptant's testimony, his father·gave the property to him in 1878, his father was taxed for it that year, and he died before the next assessment; that the rest of the children, except George, knew nothing of any claim to it by the exceptant; that George signed and swore to the inventory which contained the property, and that other persons, entitled to distribution of the estate, were unwilling to allow the exceptant's claim, and were desirous of contesting it—Messrs. Middleton and Larrison are not to be censured for not yielding to the claim of the exceptant until it had been legally established, and they, therefore, ought to be indemnified out of the estate for the expenses of·the trial of the cause, including the counsel fees paid, which, it is admitted, are reasonable in amount. But not so as to the loss on those goods. The estate ought not to be charged with that. When Messrs. Middleton and Larrison sold the goods they sold them, not only under the disadvantage of a public

claim to the property made at the time by the exceptant, but also under that of a public protest by him and his brother George against the sale, on the ground that the property belonged to the exceptant and not to the intestate. Mr. Dawes testifies that Mr. Middleton came to him at the sale and told him of the exceptant's claim, and inquired of him as to what, in his opinion, he had better do under the circumstances. Mr. Dawes advised him to ascertain to whom the property belonged before selling. Mr. Middleton (who was indemnified for selling by some of the next of kin) did not follow his advice, but said he thought there would be no difficulty, as he could arrange it with the exceptant by arbitration or in some other way. To give the accountants credit for the $519, the difference between the amount of the judgment and the price which the exceptant's goods brought at the sale, is to compel the exceptant to bear part of the loss incurred by selling his property below its value at a sale of it against his will and against his public claim and protest.

The taxes assessed on the intestate's real estate after his death, paid by the accountants, are not a proper charge against the estate. By the exceptions objection was made to the payment of taxes assessed on the land in Upper Freehold township, in Monmouth county, and the land in Ocean county, for the years 1879 and 1880. The exceptions on these subjects were overruled. They ought to have been allowed. As there was no exception to the payment of the taxes of 1881 the appeal as to those items cannot be sustained.

Nor was there any exception to the school tax paid by Mr. Middleton.

The decree of the orphans court will be reversed in respect to the $519 and the taxes paid on real estate in 1879 and 1880, but in those respects alone. The costs of the appeal will be paid out of the estate, but no allowance of counsel fees will be made to either side.